IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER LOGAN FRANKS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 322-109 |
| | ) | |
| SGT. DANZY; CO 2 SCOTT; and CO 1 HINES, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, currently incarcerated at Telfair State Prison in Helena, Georgia, commenced the above-captioned civil rights case *pro se* and is proceeding *in forma pauperis* ("IFP"). Defendants separately filed pre-answer motions to dismiss, (doc. nos. 18, 25, 26), which Plaintiff opposes, (doc. nos. 21, 31, 32.) For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Defendants' motions to dismiss be **GRANTED**, (doc. nos. 18, 25, 26), this case be **DISMISSED** without prejudice, and **CLOSED**.

**I.     BACKGROUND AND PROCEDURAL HISTORY**

On October 3, 2022, the Court screened Plaintiff's complaint and allowed to proceed Plaintiff's excessive use of force claim against Defendants Danzy, Scott, and Hines. (Doc. no. 9.)  Defendants argue Plaintiff failed to exhaust administrative remedies prior to filing his complaint.  (See doc. nos. 18, 25, 26.)

Plaintiff's complaint alleges that, on February 2, 2022, Plaintiff, then incarcerated at Johnson State Prison ("JSP"), was escorted by Defendants Danzy and Scott to the gym. (Doc. no.

1, p. 5.) In the gym, Defendants jumped Plaintiff, using their fists to beat him, then instructed him to report to their office the next morning at 8:00 a.m. (Id.) The next morning, Plaintiff arrived at the office, and Defendants Danzy and Scott gave him soup and other items to bribe him into remaining quiet about the beating. (Id.) When Plaintiff refused, Defendants Danzy and Scott followed him back to his dorm and told inmates Plaintiff was a "snitch and racist." (Id.) The inmates told Defendants Danzy and Scott that Plaintiff could no longer stay there, and Defendants handcuffed Plaintiff and took him to a holding cell. (Id.)

After dinner that evening, Defendants Scott and Hines escorted Plaintiff to the lockdown unit. (Id.) When Plaintiff requested protective custody because of the earlier events, Defendants took him to a mental health strip cell and beat him again, then stripped him of his clothes. (Id.) Plaintiff alleges all three Defendants were fined and arrested for their actions. (Id.)

Defendants submit the Declaration of Chabara Davis-Bragg, the Grievance Coordinator at JSP. (See doc. no. 18-2; doc. no 25-2; doc. no. 26-2 ( "Davis-Bragg Decl.").) As Grievance Coordinator, Ms. Davis-Bragg's responsibilities include ensuring compliance with the Georgia Department of Corrections' ("GDC") Grievance Standard Operating Procedure ("SOP"), coordinating investigations and responses to inmate grievances, and maintaining information and records regarding inmate grievances. (Id. at ¶ 4-6.)

Ms. Davis-Bragg identified one grievance Plaintiff filed at JSP possibly concerning this lawsuit. (Id. at ¶¶ 18-19 & Ex. 2.) In grievance no. 335090, submitted on February 7, 2022, Plaintiff asserts Defendants took him to the gym to jump him, refused to take him to medical, told his dorm he was a "snitch," and Plaintiff claimed he feared for his safety. (Id.) On the form, the grievance category is labeled as "physical force (non-compliance)" and it was denied without giving any other context as to whether it was non-compliant. (See id. at Ex. 2.)

2

Further, the grievance states Defendants Scott and Danzy had been placed on administrative leave on February 10th, pending the results of an investigation into Plaintiff's allegations. (Id.) Plaintiff received the denial while incarcerated at TSP on April 11, 2022, but he did not appeal. (Davis-Bragg Decl. ¶ 8.) In his response brief, Plaintiff contends he filed his grievance on February 7, 2022, at JSP, but two days later he was transferred to TSP. (Doc. nos. 21, 31, 32.) At TSP, he was placed on lockdown and the grievance counselor only came around "every two weeks," so he was "not given the opportunity" to appeal. (Id.)

Defendants Scott and Hines filed responses to Plaintiff's response to the motions to dismiss, (doc. nos. 35, 36), contending that being placed on lockdown does not justify Plaintiff's failure to appeal. Even if Plaintiff was out of time, Plaintiff did not request consideration of an untimely appeal for good cause. (Doc. no. 35, p. 2; doc. no. 36, p. 4.)

## II.   DISCUSSION

### A.   The Legal Framework

Where, as here, a defendant files a motion to dismiss a claim based on failure to exhaust administrative remedies, the Eleventh Circuit has laid out a two-step process for courts to use in resolving such motions. First, the court looks to the factual allegations made by both parties, taking the plaintiff's version as true where they conflict, and if in that light the complaint is subject to dismissal for failure to exhaust administrative remedies, the defendant's motion will be granted. Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008) (citing Bryant v. Rich, 530 F.3d 1368, 1373-74 (11th Cir. 2008) (citations omitted)). If the complaint is not subject to dismissal at the first step, then at step two the court makes specific findings to resolve the disputed factual issues, with the defendant bearing the burden of proving that Plaintiff has failed to exhaust his administrative remedies. Id. Based on its findings as to the disputed factual issues, the court determines whether the prisoner has exhausted his available administrative remedies

and thus whether the motion to dismiss should be granted. Id. Because exhaustion "is treated as a matter of abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Bryant, 530 F.3d at 1376 (citations omitted).

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process *before* initiating suit. Poole v. Rich, 312 F. App'x 165, 166 (11th Cir. 2008) (*per curiam*); Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000). "The filing of a civil suit without properly exhausting all available administrative remedies is a procedural misstep that is fatal to the underlying case." McKeithen v. Jackson, 606 F. App'x 937, 939-40 (11th Cir. 2015) (*per curiam*) (citing Johnson v. Meadows, 418 F.3d 1152, 1158-59 (11th Cir. 2005)).

The PLRA's mandatory exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. See Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (*per curiam*) (citing Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998)). Under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326. Rather, under the PLRA's "strict exhaustion" requirement, administrative

4

remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'"  Johnson, 418 F.3d at 1155, 1156.

The United States Supreme Court has identified three circumstances where administrative remedies are not available and therefore exhaustion "does not come into play": (1) prison officials refuse to follow established grievance policy; (2) the administrative process is so confusing or vague as to be "essentially unknowable"; and (3) prison officials prevent filing grievances through "machination, misrepresentation or intimidation."  Ross v. Blake, 578 U.S. 632, 643-44 (2016).  Here, Plaintiff makes no allegation or arguments under the first two situations.  To the extent Plaintiff argues prison officials refused to provide him with a grievance form, the Court makes factual findings with respect to that allegation below.  (Doc. nos. 21, 31, 32.)

Furthermore, the PLRA also "requires proper exhaustion."  Woodford v. Ngo, 548 U.S. 81, 93 (2006).  In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way.  Id. at 90 (internal quotations omitted).  If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he does not satisfy the exhaustion requirement.  Johnson, 418 F.3d at 1159.

**B.     The Administrative Grievance Procedure**

The applicable administrative grievance procedure is GDC's SOP Policy No. ("PN") 227.02, which became effective on May 10, 2019. (Davis-Bragg Decl. Ex. 1.)  The grievance procedure has two steps:  (1) Original Grievance, and (2) Central Office Appeal.  PN 227.02 § IV(C); (Davis-Bragg Decl. ¶ 8.)  The administrative remedies procedure commences with filing the original grievance with a counselor or through a kiosk or tablet.  PN 227.02 §

IV(C)(1)(c-d). The inmate has ten calendar days "from the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the grievance. Id. § IV(C)(1)(b). The timeliness requirements of the administrative process may be waived upon a showing of good cause. Id. The grievance coordinator screens the grievance to determine whether to accept it for processing or recommend the Warden reject it. Id. § IV(C)(1)(e)(i). The grievance may be rejected, *inter alia*, if it raises one of the listed non-grievable issues, includes threats or insults, or raises more than one issue/incident. Id. § IV(C)(1)(e)(ii).

  The policy requires the Warden provide a response to the prisoner who filed the grievance within forty calendar days from submission of the original grievance; a onetime ten-calendar-day extension may be granted. Id. § IV(C)(1)(f)(v). If the grievance is rejected, or if the time allowed for a response to the grievance has expired without action, the offender may proceed to step two of the grievance process, a central office appeal. Id. § IV(C)(1)(e)(v) & (c)(1)(f)(viii); § IV(C)(2). The inmate has seven calendar days from the date he receives the Warden's response to the grievance to file a central office appeal, but this time limit may be waived for good cause. Id. § IV(C)(2)(b). The Commissioner or his designee then has 120 calendar days after receipt of the grievance appeal to deliver a decision to the prisoner who filed the appeal. Id. § IV(C)(2)(e). If the central office appeal results in a determination the original grievance should have been accepted by the facility and processed, the grievance will be returned to the facility for investigation, and the Warden has fifteen calendar days from receipt of the returned grievance to give a decision to the prisoner who filed the grievance. Id. § IV(C)(2)(g). The prisoner has seven calendar days from receipt of the Warden's second response to file a second central office appeal. Id.

  Under the GDC's Policy, grievances related to physical force allegations that are deemed to be non-compliant shall be rejected but still investigated if the warranted. PN 227.02

§ IV(C)(2)(g)(i).  The facility shall forward a copy of the grievance packet containing all relevant information to the Criminal Investigation Division.  Id.  Even though the grievance is rejected, the investigation process continues and can be appealed.  Id.  If the grievance is accepted, whether it is complaint or not, the facility shall still forward a copy of the grievance packet to the Criminal Investigation Division.  Id.  § IV(C)(2)(g)(ii).  Once it is referred to the Office of Professional Standards and sent back to the inmate, this action effectively closes the grievance process, and it is not appealable.  Id.  Although the grievance is closed, the investigation process will continue.  Id.

### C. Plaintiff's Failure to Exhaust

Plaintiff dated his complaint August 29, 2022, and the Clerk of Court received it on September 9, 2022.  (Doc. no. 1.)  Plaintiff acknowledges in his complaint there is a grievance procedure and asserts he filed a grievance.  (Doc. no. 1, p. 4.)  The declaration of Chabara-Bragg establishes Plaintiff did in fact file grievance no. 335090 concerning the events in this lawsuit, and on April 11, 2022, Plaintiff received a denial stating Defendants Scott and Danzy had been placed on leave pending further investigation.  (Chabara-Bragg Decl. ¶¶ 18-19 & Ex. 2.)  This physical force grievance was appealable pursuant to the GDC handbook.  (See generally Chabara-Bragg Decl. ¶¶ Exs. 1, 2.)  Plaintiff admits in his complaint he did not appeal because he "wasn't given the opportunity."  (Doc. no. 1, p. 4.)  In his response brief, Plaintiff explains that two days after he filed his grievance at JSP, he was transferred to TSP.  (Doc. nos. 21, 31, 32.)  At TSP, he was placed on lockdown and "did not have the opportunity" to receive an appeal form the Counselor.  (Id.)

Plaintiff admits he failed to file his appeal.  (Doc. no. 1, p. 4.)  Plaintiff's allegations, taken as true, fail to demonstrate proper exhaustion under the first step of the Turner test.

7

Moving to the second step, the Court does not find credible the excuse proffered by Plaintiff that "he was unable to file an appeal because he was in lockdown at TSP." (Id.)  The prison grievance procedure is explained to an inmate when they enter the Georgia Prison System, and the complete procedure is available at any prison library.  Garcia v. Obasi, 2022 WL 669611, at *3 (11th Cir. Mar. 7, 2022).

Further, Plaintiff's allegation concerning the availability of his appeal is directly refuted by the sworn Declaration of Chabara-Bragg and the GDC inmate handbook.  The GDC inmate handbook applies to all inmates at any GDC prison, including JSP and TSP.  Timmons v. Seller, 2016 WL 5109163, at *7 (S.D.Ga. Sept. 20, 2016) ("upon admission to [the] GDC, prison officials provide an orientation to inmates on the grievance process, and the process is outlined in the inmates' Orientation Handbook."); Wilson v. Hall, 2017 WL 3444748, at *2 (S.D.Ga. July 17, 2017) ("Telfair State Prison is operated by the Georgia Department of Corrections").

The GDC inmate handbook states: (1) physical force grievances are appealable when denied; and (2) appeal forms are made available upon request at any time, even when an inmate transfers prisons. (See Chabara-Bragg Decl. ¶¶ 6-8 & Ex. 1, PN 227.02 § IV(C)(2)(g)(i)-(ii).) Here, Plaintiff was never denied an appeal form because apparently never took any action to request one.  There is no evidence or allegation that Plaintiff asked for the Grievance Counselor or attempted to alert prison officials he was trying to appeal and needed assistance obtaining a form while in lockdown.  Plaintiff merely waited for the Counselor to make rounds, which does not make the appeals process unavailable.  See Garcia, 2022 WL 669611, at *3 ("The fact that the grievance coordinator did not send Garcia an appeal form and remind him of his option to appeal without waiting for a response did not make that option unavailable—Garcia

8

has not alleged that he asked for an appeal form, or that one would not have been given to him if he had asked."); see also Timmons, 2016 WL 5109163, at *7 (holding that, while "[p]laintiff complain[ed] that no officers "made themselves available" to take his grievance,"" Plaintiff was not required to wait to submit one, thus the Court found the grievance and appeal process available). Furthermore, Plaintiff did not attempt to request consideration of an ultimately appeal for good cause. Johnson, 418 F.3d at 1152, 1158.

Therefore, Defendants' motions to dismiss for failure to exhaust administrative remedies should be granted. Because the record confirms Plaintiff did not exhaust his administrative remedies, his claims are subject to dismissal. See Leal v. Ga. Dep't of Corr., 254 F.3d 1276, 1279 (11th Cir. 2001) (*per curiam*) ("'[U]ntil such administrative remedies as are available are exhausted,' a prisoner is precluded from filing suit in federal court.") (citations omitted); Higginbottom, 223 F.3d at 1261.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Defendants' motions to dismiss be **GRANTED**, (doc. nos. 18, 25, 26), and this case be **DISMISSED** without prejudice, and **CLOSED**.

SO REPORTED and RECOMMENDED this 15th day of February, 2023, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA